**ROLAND v. WOODS, Housing Expediter.**

**No. 469.**

United States Emergency Court of Appeals.
Heard at San Francisco Sept. 3, 1948.
Decided Oct. 11, 1948.

84

Morgan V. Spicer, of San Francisco, Cal., for complainant.

Betty L. Brown, Atty., Office of Housing Expediter, of Washington, D. C. (Ed.

Dupree, Gen. Counsel, Robert A. Sauer, Asst. Gen. Counsel, Charles P. Liff, Chief, Appeals Section, and John B. Duncan and Eleanore R. Kerber, Attys., all of the Office of Housing Expediter, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and LINDLEY and LAWS, Judges.

MARIS, Chief Judge.

The complainant was the owner of the Le Grand Hotel at Le Grand, California, in the Modesto-Merced Defense-Rental Area. The Le Grand Hotel is a two-story tile and stucco building containing more than sixty rooms which at some time prior to rent control had been operated as a hotel. It had fallen into disrepair, however, and in 1945 it was purchased by the complainant and restored. In the course of this work the rooms on the second floor of the building were grouped together in twos and threes to form seventeen apartments. This was done by cutting connecting doors in the partition walls and installing a sink, gas stove, cupboard, table, and chairs in one room in each group for use as a kitchen and dining room, the other rooms being furnished as bedrooms and living rooms. The original arrangement of toilet and bath facilities in the building was not altered, however, these facilities being centrally located and used in common by the occupants of the apartments.

The apartments on the second floor of the building were completed and all seventeen of them were rented furnished in October, November and December, 1945. Twelve of them were first rented by the month, two of them by the week and three by the day. During this period complainant several times went to the Area Rent Office, requesting instructions as to registration of the Le Grand Hotel and asking for registration forms. He desired to register the building under the Rent Regulation for Hotels and Rooming Houses [1] and he was informed that registration forms for that purpose were not available but were on order. The complainant subsequently wrote two or three times to the Area Rent Office requesting registration blanks and finally on

---

[1] 10 F.R. 3452.

December 24, 1945 he again wrote requesting them. In this letter he stated "I will have between 15 and 25 apartments when I am complete. These apartments will be both transient and permanent and I want forms to register same."

Shortly thereafter the Area Rent Office forwarded to the complainant registration blanks for registering his building under the Hotel Regulation and under date of January 19th he forwarded to the Area Rent Office for filing a rent registration statement under the Hotel Regulation covering the seventeen apartments on the second floor of his building. Within about a week he was visited by the Area Rent Director and a district field representative of the Office of Price Administration who informed him that he must register his apartments under the Rent Regulation for Housing.[2] These officials filled out registration statements for the seventeen apartments in question under the Housing Regulation and they were signed in the complainant's name by his wife who was his bookkeeper. These registration statements set out the rents charged on the date of first renting as the maximum rents. They were filed by the district field representative in the Area Rent Office on January 30, 1946.

On February 25, 1946 the Area Rent Director initiated proceedings to decrease the maximum rents for the seventeen apartments in question on the ground that the rents were above the level of comparability. On March 4th the Area Rent Director issued orders decreasing the maximum rents of all seventeen apartments and he made the orders retroactive to the dates of first renting. The latter action was taken upon the ground that the complainant had failed to file registration statements within thirty days after the dates of first renting as required by Section 4(e) of the Housing Regulation. Thereafter complainant filed an application for review by the Regional Administrator which was denied and on June 25, 1947 he filed his protest with the Housing Expediter. The protest was considered by a board of review and denied on March 5, 1948 and the complaint now before us followed.

In view of the fact that an enforcement suit under Section 205(e) of the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 925(e), is pending against the complainant in the United States District Court for the Southern District of California we have jurisdiction of the complaint under Section 1(b) of the Act, 50 U.S.C.A.Appendix, § 901(b). But since the enforcement suit involves only excess rents collected between the dates of first renting and March 4, 1946, the date of the Rent Director's orders decreasing the rents, we are concerned in the present case only with the retroactive features of the orders under protest.

The orders in question were made retroactive in accordance with the following provision of Section 4(e) of the Rent Regulation for Housing:[3]

"If the landlord fails to file a proper registration statement within the time specified (except where a registration statement was filed prior to October 1, 1943), the rent received for any rental period commencing on or after the date of the first renting or October 1, 1943, whichever is the later, shall be received subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under section 5(c) (1). Such amount shall be refunded to the tenant within 30 days after the date of issuance of the order. If the Administrator finds that the landlord was not at fault in failing to file a proper registration statement within the time specified, the order under section 5(c) (1) may relieve the landlord of the duty to refund."

It will be observed that under the foregoing provision such rent reduction orders were to be enforced retroactively only if the landlord was "at fault" in failing to register his accommodation within the time specified. If the facts were such as to compel the conclusion that he was not at fault the landlord was to be relieved of the duty of refunding any past rents received in excess of the amounts fixed by the order. We are, therefore, faced at the outset with the question whether the facts of this case compel the conclusion that the complain-

---

[2] 10 F.R. 3436.

[3] 10 F.R. 3438.

ant was not at fault in failing to file registration statements under the Housing Regulation within thirty days after his apartments were first rented.

We start with Section 1(e) of the Rent Regulation for Hotels and Rooming Houses,[4] the first paragraph of which was as follows:

"Election by landlord to bring housing under this regulation. Where a building or establishment which does not come within the definitions of a hotel or rooming house contains one or more furnished rooms or other furnished housing accommodations rented on a daily, weekly or monthly basis, the landlord may, with the consent of the Administrator, elect to bring all housing accommodations within such building or establishment under the control of this regulation. A landlord who so elects shall file a registration statement under this regulation for all such housing accommodations, accompanied by a written request to the Administrator to consent to such election."

It will be seen that Section 1(e) of the Hotel Regulation applied to buildings containing housing accommodations which, except for the operation of that section, would have come under the Housing Regulation. It gave to the landlord of a building which was not strictly speaking a hotel or rooming house but which contained some furnished accommodations rented on a short term basis the right, at his election and with the consent of the Administrator, to bring his building completely under the control of the Hotel Regulation. It thus appears that Section 1(e) of the Hotel Regulation would have been applicable to housing accommodations of this type which had been first rented after the maximum rent date and which, except for Section 1(e), would, therefore, have been subject to Section 4(e) of the Housing Regulation.

Section 4(e) of the Housing Regulation provided that housing accommodations must be registered under that regulation within thirty days after their first renting. Section 1(e) of the Hotel Regulation, on the other hand, provided that housing accommodations sought to be brought within its terms were to be registered under the Hotel Regulation. The question, therefore, arises whether a landlord who elected under Section 1(e) to bring his housing accommodations under the control of the Hotel Regulation was required nonetheless to register them under the Housing Regulation also. We think that the regulations, when fairly construed together, did not compel such action. On the contrary we think that in such a situation the landlord was not required to register his accommodations under Section 4(e) of the Housing Regulation unless and until the Administrator had refused consent to his election to bring them under the Hotel Regulation or the landlord had decided to revoke his election.[5] Accordingly if such a landlord registered his accommodations under Section 4(e) of the Housing Regulation promptly after he learned that the Administrator had not consented to his registering under the Hotel Regulation he could hardly be held to be at fault in not having filed sooner his registration statements under the Housing Regulation.

Turning to the facts of the case before us it is perfectly clear that even if the Le Grand Hotel was not a hotel or rooming house within the meaning of the Hotel Regulation, as the respondent asserts, it was a building which came within the express language of Section 1(e) of the Hotel Regulation because it contained one or more furnished housing accommodations rented on a daily, weekly or monthly basis. In fact all seventeen of the apartments on the second floor were so rented. Accordingly when the complainant reconstructed the building and offered these apartments for rent he had a definite right to file the first registration statements for them under the Hotel Regulation. For-

---

4 10 F.R. 3452.

5 This conclusion finds support in the third paragraph of Section 1(e) of the Hotel Regulation which provides that if a landlord desires to revoke his election "He shall make such revocation by filing a registration statement or statements under the Rent Regulation for Housing." 10 F.R. 3452. These were certainly intended to be the first registration statements filed under the Housing Regulation.

either the building was a hotel or rooming house within the meaning of the Regulation and, therefore, registerable thereunder or else it was registerable under the Regulation at the complainant's election subject to the approval of the Administrator, by virtue of the express terms of Section 1(e) thereof.

█ The evidence indicates that the complainant regarded his building as a hotel within the meaning of the Regulation and it is quite clear from the uncontradicted evidence that he made every reasonable effort to file a registration statement for it under the Hotel Regulation and in fact did so on January 19, 1946. It is, of course, true that this registration statement was not filed within the period of five days fixed by Section 7(a) of the Hotel Regulation. This, however, was not the complainant's fault. The uncontradicted evidence establishes that he made prompt and repeated applications to the Area Rent office for the necessary forms which apparently were not available at that office when his apartments were completed and that promptly after he received the forms he filed the registration statement under the Hotel Regulation.

As we have said, the evidence would lead to the conclusion that the complainant regarded his building as a hotel and registerable as such. It does not in any way negative the idea, however, that he desired his registration of it to be treated as an election to bring it under the Hotel Regulation pursuant to Section 1(e), if that should be necessary to bring it under the Hotel Regulation. For he made full disclosure to the local rent authorities that his apartments were not wholly transient but were permanent as well. Moreover there seem to have been changes in the personnel of the local rent office during this period and it appears that neither the complainant nor the local rent officials were very clear as to the legal status of the complainant's building.

But whether the complainant intended to register the Le Grand Hotel under the Hotel Regulation as of right or as a matter of election under Section 1(e) makes little difference. For the purpose of determining whether he was at fault in failing initially to register under the Housing Regulation—the sole question with which we are here concerned—it must be concluded that the complainant's registration of his building on January 19, 1946 under the Hotel Regulation was either in performance of his duty under Section 7(a) or pursuant to his election under Section 1(e) of the Hotel Regulation. It is true that he did not comply with certain formal requirements of Section 1(e). He did not accompany his registration statement with a formal written request to the Administrator to consent to his election. But looked at solely from the standpoint of determining whether he was at fault in failing to register under the Housing Regulation we think that the complainant cannot fairly be held at fault because his actions in registering under the Hotel Regulation were not as clear cut as they might have been when he, a layman, was presented with the question whether he should register his building under the Hotel Regulation (a) as a hotel or (b) as a building which he elected to bring under the regulation pursuant to Section 1(e) because it contained furnished transient accommodations.

The record in this case leaves no escape from the conclusion that the local rent authorities must have known from the complainant's conversations and correspondence with them that he was seeking to register his building under the Hotel Regulation in whatever way the law and regulations permitted him to do so. Indeed it would seem that prior to January 19, 1946 the authorities may even have requested the complainant to file a hotel registration statement. For they sent him forms for this purpose and in his letter of January 19th transmitting the hotel registration statement for filing he said "Enclosed is the Rent Registration Statement you requested me to file." Accordingly when the rent authorities subsequently took the position that the complainant's building was not a hotel or rooming house they must have understood that his filing of the hotel registration statement involved an election on his part and a request for their consent to it. This is borne out by the admitted fact that within a week after his hotel registra-

tion statement had been filed the Area Rent Director had called upon him and informed him that it would be necessary for him to register under the Housing Regulation.

If, as the complainant now contends, the Le Grand Hotel was a hotel or rooming house within the meaning of the Hotel Regulation he was obviously not at fault in failing to register initially under the Housing Regulation. Assuming, however, as the respondent contends, that the Le Grand Hotel was not a hotel or rooming house as defined in the Hotel Regulation the record in this case compels the finding that the complainant attempted, although perhaps informally, to exercise his right of election to bring the Le Grand Hotel under the control of that Regulation. Since it fur-

ther appears that his apartments were registered under the Housing Regulation immediately after the Area Rent Director instructed him to do so, we conclude that the Rent Director erred in not finding that the complainant was not at fault in failing to register his apartments under the Housing Regulation within thirty days after their first renting. It follows that he also erred in making the rent reduction orders retroactive.

A judgment will be entered setting aside the seventeen orders of the Area Rent Director issued March 4, 1946 reducing the rents of the apartments on the second floor of the Le Grand Hotel to the extent that said orders were effective for any period of time prior to the date of their issuance.